## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY JEFFERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 5:06-CV-1442-IPJ |
| | ) | |
| CITY OF HUNTSVILLE, | ) | |
| ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the court is the summary judgment motion filed by the City of Huntsville ("COH") (doc. 25). The motion was filed with a supporting brief (doc. 27) and evidentiary materials (doc. 26). The plaintiffs filed a response in opposition to the motion (doc. 29) to which the COH filed a reply (doc. 34).

## PROCEDURAL AND FACTUAL BACKGROUND

Johnny Jefferson, Gregory Houston, and Charlie Williams (collectively "the plaintiffs") sued the City of Huntsville (COH) alleging race discrimination and retaliation in violation of Title VII (doc. 1). At all times material to this action, the plaintiffs were employed with the Landscape Management Division of COH and Layne Vaughan was the manager of the Landscape Management Division. Vaughan Aff. at ¶¶ 2, 3. The plaintiffs were employed in the State Right-of-Way group of the Landscape Management Division, which was supervised by Eddie Helton. Vaughan Aff. at ¶ 13, Tab 11. The State Right-of-Way group is divided into two crews: (1) the State Routes crew which is supervised by Frank Palacios and (2) the Roadside Pride

crew which is supervised by Kris Travis.  *Id.*

Both Jefferson and Houston were employed by COH as landscape crew leaders for the States Routes crew at all material times in this case.  *Id.*  Jefferson is still employed by COH as a landscape crew leader with the State Routes crew, and he has been in this position since February 8, 1999.  Jefferson Dep. at 24.  Houston is currently employed by the COH as an irrigation technician with another Landscape Management crew.  Houston Dep. at 33-35.  However, from February 8, 1999, to August 2005 he was a landscape crew leader with the State Routes crew.  *Id.* at 36-37.

Williams was employed by COH on October 25, 2004, as probationary full-time lead worker in the Roadside Pride crew.  Vaughan Aff. at ¶ 13 and Tab 11; Williams Dep. at 23, 41.  Prior to October 25, 2004, Williams was employed by COH as a temporary worker with Landscape Management for many years.  Williams Dep. at 9-10, 20-23.  Williams was terminated from his employment with COH on June 27, 2005, and he is not currently employed by COH.  Vaughan Aff. at ¶ 7.  At all times material to this case--during his full-time temporary and probationary employment with Landscape Management--Williams worked with the Roadside Pride crew.  *Id.* at ¶ 13, Tab 11.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The Supreme Court has

2

explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting FED. R. CIV. P. 56(e)).  In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  That party must demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 587.  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

## ANALYSIS

Jefferson and Houston allege that they were discriminated against on the basis

3

of race in four ways: (1) failure to promote; (2) distribution of overtime assignments; (3) failure to service machines; and (4) discrimination in the way discipline was imposed. Williams alleges discrimination in the same ways, but he does not allege that he was discriminated against on the basis of the overtime assignments. Each of the plaintiffs also allege that they were retaliated against in violation of Title VII.

### 1. Promotional Bypassing

The plaintiffs allege that they were discriminatorily denied promotions to herbicide spray technician ("herb tech") positions. The herb tech positions at issue in this case were awarded to two white employees, Todd Howell and Catherine Junge. Compl. at ¶¶ 8-14; Jefferson Dep. at 52-53; Houston Dep. at 40-42; Williams Dep. at 57-58. Howell and Junge were officially promoted to the herb tech positions on September 13, 2004. Puckett Aff. at ¶ 3, Tabs 15, 17. At the latest, the plaintiffs learned that Howell and Junge were promoted to the herb tech positions within two weeks of September 13, 2004. Jefferson Dep. at 53-54; Houston Dep. at 41-42, 46, 47-50; Williams Dep. at 57-60.

Jefferson alone alleges that he was discriminatorily bypassed for a promotion to an Equipment Operator III (EOIII) position which was awarded to Richard Fowler, a white employee. Jefferson Dep. at 72-77; Puckett Aff. at ¶ 3, Tab 25. Jefferson learned that the EOIII promotion was awarded to Richard Fowler on April 26, 2004, the day that Fowler was promoted. Jefferson Dep. at 72-73.

COH argues that summary judgment should be granted in its favor with respect to the failure to promote claims because the claims are time barred for failure to file

4

the EEOC charge within 180 days of the date of the alleged discrimination.[1]  In order to litigate a claim under Title VII, a plaintiff must first exhaust administrative remedies, beginning with the filing of a charge of discrimination with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).  Further, the plaintiff must file the charge of discrimination with the EEOC within 180 days after the date of the alleged discrimination.  29 C.F.R. § 1626.7(a).  The failure to file a timely charge of discrimination with the EEOC results in a bar of the claims contained in an untimely charge.  *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000).  A cause of action for discrimination based on the failure to promote accrues, at the latest, on the date that the plaintiff learns that he or she was not selected for the promotion.  *Cooper v. Southern Co.*, 390 F.3d 695, 734 (11th Cir. 2004).

The plaintiffs filed their EEOC charges in this case in September 2005.  Attach. to Compl., EEOC charges.  With respect to the failure to promote to the herb tech positions, the cause of action accrued, at the latest, two weeks after September 13, 2004.  With respect to Williams's claim for failure to promote to the EOIII position, the cause of action accrued on April 26, 2004.  Because the plaintiffs' EEOC charges were not filed within 180 days of either of these dates, the court finds these claims are time barred.  Thus, COH's motion for summary judgment on the plaintiffs's promotional bypassing claims shall be **GRANTED**.

### 2. Disparate Treatment Claims

---

[1]The plaintiffs do not address this argument in their opposition brief.

5

Jefferson and Houston allege that they were discriminated against on the basis of race in violation of Title VII because they were forced to work overtime when similarly situated white employees were given a choice of whether to work overtime. The plaintiffs also allege that Larry Bradford was instructed not to service their machines whereas similarly situated white people were able to get their machines properly serviced by him and that this amounted to racial discrimination in violation of Title VII.

The parties agree that there is no direct evidence of discrimination in this case, and therefore, the plaintiffs have the burden of establishing a *prima facie* case of disparate treatment, which, if established, then creates a rebuttable presumption that the employer acted unlawfully. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). To establish a *prima facie* case of disparate treatment, a plaintiff must prove that "(1) he belongs to a racial minority; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

### a. Overtime Assignments

It appears that the basis of the claim regarding overtime assignments is that Jefferson and Houston were frequently sent home by supervisors on inclement weather days (during the work week) and they were then required to work on their "off days" (Saturdays and Sundays). Jefferson and Houston allege that white employees were not required to go home during inclement weather days and were

given a choice whether to work on "off days."  Jefferson Dep. at 171-173; Houston Dep. at 96; 103-104.  Jefferson and Houston also stated that white co-workers were never told to do this.  Jefferson Dep. at 171-173; Houston Dep. at 96, 103-104.  Jefferson testified in his deposition that Catherine Junge, David Osborne, Todd Howell, Richard Fowler, and Robert Smith were white employees that were given the option to work overtime while he was not given the option.  Jefferson Dep. at 93.  Houston testified that Larry Bradford, Richard Fowler, and Robert Smith were white employees that were given the option to work overtime while he was not given the option.  Houston Dep. at 98-100.

COH argues that Jefferson and Houston cannot establish a *prima facie* case of discrimination with respect to overtime assignments because they have not proven that similarly situated white employees were treated more favorably with respect to overtime assignments.  *See Holifield*, 115 F.3d at 1562 (to establish a *prima facie* case of discrimination the plaintiff must show, among other things, that the employer treated similarly situated employees outside of the plaintiff's classification more favorably).  Assuming that Jefferson and Houston suffered an adverse employment action as a result of having to work on "off-days," the court finds that Jefferson and Houston have failed to demonstrate that similarly situated white employees were given a choice of whether they wanted to work overtime.  Jefferson and Houston were employed by COH as crew leaders in the State Routes crew.  Vaughan Aff. at ¶ 13, Tab 11.  Junge, Osborne, and Howell were herb techs.  *Id.*  Fowler and Bradford both worked as EOIII technicians.  *Id.*  Therefore, these employees were not similarly

situated given that they held different positions and had different responsibilities than Jefferson and Houston. Like Jefferson and Houston, Smith was a crew leader, but he worked with the Roadside Pride crew as opposed to the State Routes crew. *Id.* The State Routes crew and the Roadside Pride crew are supervised by different COH employees. Jefferson Dep. at 30-31. The State Routes crew has more grass to cut, more areas to cover, more trash to pick up, and more staff than the Roadside Pride crew. Jefferson Dep. at 30; Houston Dep. at 32-33. It takes State Routes crew a longer amount of time to complete its mowing than the Roadside Pride crew, and State Routes crew must mow its areas more frequently than the Roadside Pride crew. Jefferson Dep. at 30; Houston Dep. at 33. The State Routes areas must be mowed more frequently because COH administration wants main thoroughfares that the State Routes crew is responsible for mowing to be mowed more often than other streets that are the responsibility of the Roadside Pride crew. Jefferson Dep. at 30. Given the differences in responsibilities between the Roadside Pride crew and the State Routes crew, the court finds that Smith, a Roadside Pride crew leader, is not similarly situated to Jefferson or Houston who were crew leaders with the State Routes crew.

This finding is further supported by the lack of evidence to demonstrate that work schedules were assigned on the basis of race. In fact, the evidence submitted by COH demonstrates that Jefferson and Houston worked significantly less overtime than other employees, white or black, on the State Routes crew. Def.'s Ex. V, Overtime Charts. Jefferson also admits that John Holt, a white lead worker with the State Routes crew was also forced to work overtime. Jefferson Dep. at 93. The court

finds that summary judgment is due to be **GRANTED** in favor of COH with respect to Jefferson and Houston's claims alleging racial discrimination in the way overtime assignments were made.

### b. Servicing of Machines

The plaintiffs allege that Larry Bradford was instructed not to service their machines whereas similarly situated white people were able to get their machines properly serviced by him.   From 2003 to 2005 Bradford performed general maintenance on Landscape Management employees' machines including changing tires and belts, fueling, and blowing out the machines when they overheated. Bradford Aff. at ¶7.  However, Landscape Management employees were responsible for light maintenance on their own machines, including greasing them.  *Id.*  Bradford would often have numerous machines to repair because each machine may need to be serviced several times per day.  *Id*.

Houston alleges two occasions in which he requested that Bradford service his machine and Bradford did not do so.  Houston Dep. at 155-157.  On one occasion, Helton had instructed Bradford that the workers had to service their own machines. *Id*. at 156.  On the second occasion, Houston called Bradford on his radio to request service.  *Id.* at 156-157.  Helton intercepted the radio call and told Houston that Bradford could not help him at the moment because Bradford was helping him.  *Id*.

Jefferson's machine generally required servicing 10-15 times per day. Jefferson Dep. at 154.  There were six or seven total days when Bradford did not come to service his machines.  *Id.* at 154-55.  As a result of these occurrences,

Jefferson had to wait for two to three hours to have his machine serviced or he had to work on his own machine in the hot sun. *Id.* at 155. Jefferson testified during his deposition that not getting machines serviced by Bradford also slowed down the plaintiffs' productivity. *Id.* at 175. Jefferson also testified that Helton told Bradford not to worry about servicing plaintiffs' machines which required the plaintiffs to service their own machines. *Id.* 148.

Williams alleges only one occasion in which Bradford did not service his machine when he made a service request. Williams Dep. at 88-91. On this occasion, Bradford brought Williams the necessary parts and Williams fixed the machine himself. *Id.* As a result, Williams was delayed for two to three hours from mowing grass. *Id.*

COH alleges that summary judgment is due to be granted in its favor with respect to the disparate treatment failure to service claims because the plaintiffs cannot demonstrate that an adverse employment action occurred as a result of such a failure, the plaintiffs failed to point to similarly situated white employees whose machines were serviced when the plaintiffs' machines were not serviced, and because the plaintiffs did not allege discriminatory failure to service machines in their EEOC charges. The plaintiffs did not respond to any of these arguments in their opposition brief, thus signaling the abandonment of these claims. *See Resolution Trust Corp. v. Dumar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate

arguments; grounds alleged in the complaint but not relief upon in summary judgment are deemed abandoned.") (internal citations omitted); *Burnett v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Fla. 2004) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party.").

However, even when the court considers the evidence before it, it is clear that the plaintiffs cannot establish a *prima facie* case of discrimination in the failure to service the plaintiffs' machines. The plaintiffs were delayed for a few hours and had to service their own machines in the hot sun when Bradford did not service the machines for the plaintiffs. The court finds that this does not amount to an adverse employment action. *See Davis v. Town of Lake Park, Fla.,* 245 F. 3d 1232, 1239 (11th Cir. 2001) (holding that to establish an adverse employment action under Title VII, "an employee must show a serious and material change in the terms, conditions, or privileges of employment," as viewed by a reasonable person in the circumstances). Further, the plaintiffs have not identified any similarly situated white individuals whose machines were serviced while the plaintiffs' machines were not serviced. Therefore, COH's motion for summary judgment on the plaintiffs' disparate treatment failure to service claims shall be **GRANTED**.

### 3. Disparate Discipline

The plaintiffs allege that disciplinary measures imposed against them amounted to racial discrimination in violation of Title VII. Houston alleges two instances of disparate discipline, including one where he was disciplined along with Jefferson.

11

Jefferson alleges one instance of disparate discipline. Lastly, Williams alleges one instance of disparate discipline (his termination).

To establish a *prima facie* case of racial bias in the application of discipline for violation of work rules,

> "the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.

*Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).

When a plaintiff seeks to prove discrimination in the application of discipline by contending that he or she "did not violate the work rule," the employer can successfully rebut a *prima facie* case of discrimination by demonstrating that "it honestly believed the employee committed the violation." *Id.* Further, an admission of misconduct is sufficient to demonstrate an employer's good faith belief that the employee engaged in the misconduct. *Id.*

When the plaintiff seeks to prove discrimination in the application of discipline by the second method--showing that a person outside the protected class received less severe discipline for similar conduct–the plaintiff must show that "the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield*, 115 F.3d at 1562. A plaintiff is similarly situated to another employee only if "'the quantity and quality of the comparator's misconduct [are] nearly identical.'" *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir.2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999)).

### a. Houston's Failure to Report for Work on April 16, 2005

On April 16, 2005, a Saturday, Houston and other employees on the State Routes and Roadside Pride crews were scheduled to work.   Houston Dep. at 123. However, Houston failed to report for work on April 16, 2005. *Id.*  Because Houston failed to report for work, Vaughan conducted a departmental hearing at which Houston admitted that he did not show up for work that Saturday despite the fact that he knew he was scheduled to work.   Vaughan Aff. at ¶ 5.   Vaughan suspended Houston for three days for insubordination and unauthorized absence.  Vaughan Aff. at ¶ 5, Tab 4.  Houston alleges that the three-day suspension was imposed because of his race in violation of Title VII.

COH argues that summary judgment is appropriate because Vaughan had a good faith belief that Houston engaged in the conduct of which he was accused given that Houston admitted that he did not report for work.  However, evidence of a good faith belief that an employee actually committed misconduct is only required when the plaintiff attempts to establish a *prima facie* case of discrimination by the first method--demonstrating that he or she did not actually commit the conduct for which he or she was punished.  This is not the case with respect to Houston's failure to report for work.  Houston does not dispute that he did not, in fact, show up for work on April 16, 2005.   Therefore, the issue is whether Houston can establish that similarly situated white employees that committed "nearly identical" misconduct were given more favorable treatment.

Houston points to Bradford, Obsorne and Helton as white employees that were

given less severe discipline when they failed to show up for work.  Houston Dep. at 124-129, 136-138.  However, as stated before, Bradford and Osborne are not similarly situated to Houston because they held different job titles and had different responsibilities than Houston.  Further, Helton is also not similarly situated to Houston because Helton served as a supervisor.  Thus, with respect to Houston's claim alleging disparate discipline arising out of his failure to report for work, the court finds that summary judgment is due to be **GRANTED** in favor of COH.

### b. The June 28, 2005 Incident

On June 28, 2005, Jefferson and Houston were responsible for mowing the west side of Governor's drive.  Vaughan Aff. at ¶ 6.  After completing this task, Houston and Jefferson sat in the parking lot of the  shopping center off of Governor's Drive with three black temporary employees (Robert Houston, Keith Abercrombie, and Dexter Nance).  Jefferson Dep. at 133-34; Houston Dep. at 112-14; Vaughan Aff. at ¶ 6, Tab 5.  Jefferson and Houston were accused of sitting in the parking lot too long. Jefferson Dep. at 134; Houston Dep. at 112; Vaughan Aff. at ¶ 6, Tab 5.  There is a dispute with regard to how long it took for the crew to mow the west side of Governor's drive and there is a dispute with regard to how long Houston and Jefferson and the three temporary employees were sitting in parking lot.   Jefferson and Houston contend that they only sat in the parking lot for approximately one hour to an hour and a half during their lunch break.  Jefferson Dep. at 135-136; Houston Dep. at 113-115.

On June 30, 2005, Vaughan held a departmental hearing to address the charges

against Jefferson and Houston for malfeasance and neglect in the performance of their duties arising out of the June 28, 2005, incident.  Jefferson Dep. at 131-132; Houston Dep. at 116; Vaughan Aff. at ¶ 6, Tab 5.  Jefferson and Houston were accused of not performing their assigned duties.  Vaughan Aff. at ¶ 6, Tab 5.  Specifically, Jefferson and Houston were accused of taking an extended break after mowing the west side of Governor's drive and Vaughan concluded that mowing the west side of Governor's Drive should have only taken Jefferson and Houston thirty minutes to an hour.  *Id*. Vaughan also questioned the three black temporary employees who were working with Jefferson and Houston that day.  *Id*.  The temporary employees did not deny taking an extended break.  *Id*.  When asked why he thought the crew made a thirty minute task last from 7:00 a.m. to 1:05 p.m., Robert Houston told Vaughan that he was just doing was he was told.  *Id*.  Abercrombie told Vaughan that he did not know why they took an extended break except to eat lunch.  *Id*.  Nance told Vaughan that Jefferson and Houston wanted him to lie about the amount of time they took during the break, but Nance told Jefferson and Houston that he would not lie.  Jefferson Dep. at 136; Houston Dep. at 117-18; Vaughan Aff. at ¶ 6, Tab 5.  Jefferson disputes that he asked Nance to lie for him.  Jefferson Dep. at 137-138.  Nance told Vaughan that he asked Jefferson and Houston why they did not continue mowing on the east side of Governor's Drive. Vaughan Aff. at ¶ 6, Tab 5.  Jefferson and Houston told Nance that they were going to make the work on the west side of Governor's Drive last all day.  *Id*.  Vaughan also confirmed with Nance that mowing the west side of Governor's Drive actually only took about thirty minutes.  *Id*.  Vaughan decided that

Jefferson and Houston were guilty of malfeasance and neglect based on the information collected. *Id*. Vaughan imposed a five day suspension on Jefferson and Houston. Vaughan Aff. at ¶ 6, Tabs 5,-7.

With respect to Jefferson and Houston's claims alleging that the five day suspension was discriminatory, it is unclear by which method they seek to establish a *prima facie* case. *See Jones*, 874 F.2d at 1540. Assuming that Jefferson and Houston wish to establish a *prima facie* case by proving that they did not actually take an extended break, it is clear that Vaughan had a good-faith belief that Jefferson and Houston did take an extended break. Vaughan was given conflicting accounts from three black temporary employees that were working with Jefferson and Houston on that day and none of the temporary employees denied taking an extended break. Further, Jefferson and Houston do not dispute that, after speaking with the three black temporary employees that were working with them on June 28, 2005, Vaughan was faced with conflicting accounts of the events leading to their suspension and that Vaughan had to make a judgment call regarding who was telling the truth. Jefferson Dep. at 138-140; Houston Dep. at 117-119.

Assuming that Jefferson and Houston seek to establish a *prima facie* case by proving that they engaged in misconduct similar to that of persons outside the protected class who were punished less severely, the court finds that Jefferson and Houston have failed to meet their burden. Houston alleges that the following incidents establish that white employees engaged in similar misconduct and they were not disciplined or were less severely disciplined: (1) in the summer of 2003, Richard

Fowler used a hacksaw to cut the steering wheel on a city truck and Helton only required him to replace the steering wheel, Houston Dep. at 119; (2) Jason Harlow put a live chicken in a coworker's car in the summer of 2003 and the only discipline he faced was having to have the coworker's car cleaned, *Id.* at 120; and (3) in the winter of 2004, Harlow and Fowler wrestled in Helton's office and they put a hole in the wall, but the only discipline they faced was having to fix the hole, *Id.* at 121. None of these three incidents involve a failure to perform job duties. Therefore, the court finds that these incidents are not "nearly identical" to taking an extended break or malfeasance and neglect in the performance of job duties.

The court finds that summary judgment is due to be **GRANTED** in favor of COH with respect to Jefferson and Houston's claims alleging that the five-day suspension received amounted to racial discrimination in violation of Title VII.

### c. Williams's Termination

On or around June 7, 2005, Williams reported to Travis that two black temporary employees, Aaron Hammonds and Kevin McCaulley, had signed time cards for working on June 6, 2005, and that they did not work on that day. Williams Dep. at 69-71. Travis spoke with Hammonds and McCaulley about Williams's allegation and the two employees denied that they were not present at work on June 6, 2005. *Id.* at 74. Ultimately, Williams was accused of falsifying time or saying that a worker was present when in fact they were not present at work or vice versa. Williams Dep. at 77-78; Vaughan Aff. at ¶ 7, Tab 8. Vaughan held a hearing on the charges on June 27, 2005. Williams Dep. at 77-79; Vaughan Aff. at ¶ 7, Tab 8.

Vaughan concluded from the hearing that Williams was guilty of falsifying time cards and, as a result, Williams was terminated.  Williams Dep. at 79-80; Vaughan Aff. at ¶ 7, Tabs 8, 9.

Because Williams has not pointed to any similarly situated employees that were accused of the similar conduct--falsifying time cards--but not punished or were less severely punished, the court will assume that Williams wishes to establish a *prima facie* case by proving that he did not actually falsify the time cards of two temporary employees.[2]   However, even assuming that Williams did not, in fact, falsify time cards, the court finds that COH has provided sufficient evidence that "it honestly believed the employee committed the violation."  *Jones*, 874 F.2d at 1540.  Williams does not dispute that Vaughan, the supervisor that made the decision to terminate his employment, was confronted with a situation in which employees gave conflicting versions of events and that Vaughan had to make a judgment call regarding which employees were telling the true version of events.  Williams Dep. at 81.  Williams has not offered any evidence to demonstrate that Vaughan's belief that Williams falsified time cards was insincere or that Vaughan's decision to terminate Williams was made on the basis of race.  Further, Williams admitted that Vaughan did not have any ill will towards him.  *Id*. at 86.  Therefore, the court finds that summary judgment is due to be **GRANTED** in favor of COH with respect to Williams's claims alleging that his termination amounted to discrimination in violation of Title VII.

---

[2]COH disputes Williams's version of the events leading to his termination. However, for the purposes of this motion, the court must view the facts in the light most favorable to Williams.

18

### 4. Retaliation

### a. Williams

Williams alleges that he was retaliated against in violation of Title VII because he decided not to sell Travis his Jeep, he stopped bringing beer and liquor to Travis at work, he did not play cards with coworkers, and he did not laugh at Travis' "corny jokes." Williams Dep. at 109-113. A *prima facie* case of retaliation under Title VII requires a showing that the plaintiff engaged in "a statutorily protected expression." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000). Williams has failed to present evidence to show that he engaged in statutorily protected activity. Therefore, the court finds that COH's motion for summary judgment is due to be **GRANTED** with respect to Williams's claim of retaliation.

### b. Jefferson and Houston

On April 29, 2005, just after Houston had been suspended for three days for failure to show up for work, Houston filed an internal complaint of race discrimination and harassment against COH and Helton. Simmons Aff. at ¶ 5. The complaint was received by Saundra Simmons, COH's Equal Employment Officer, and she began an investigation into the complaint. *Id.* at ¶¶ 5, 6. On May 4, 2005, Simmons informed Ralph Stone, the department head, and Vaughan that a complaint had been made against the Landscape Management division, but she did not reveal that Houston had made the complaint or what allegations he had made. *Id.* at ¶ 5. Simmons interviewed every full-time employee in the State-Right-of-Way division in connection with the investigation. *Id.* at ¶ 6. Simmons interviewed Helton on

August 9, 2005.  *Id.*  She interviewed Stone and Vaughan on August 15, 2005, and August 18, 2005, respectively.  *Id.*  Simmons did not inform Helton, Stone, or Vaughan prior to their interviews that Houston was the complainant, or that his allegations were against Helton.  *Id.*

Jefferson never filed a formal complaint with Simmons alleging discrimination. *Id.* at ¶ 8.  However, when Simmons interviewed Jefferson in connection with the investigation into Houston's complaint, Jefferson expressed that he had experienced some of the same or similar problems as Houston had experienced.  *Id.*

Jefferson alleges that he was retaliated against for complaining about discrimination because Helton began to speak rudely to him after he complained. Jefferson Dep. at 159.  In order to establish a *prima facie* case of retaliation in violation of Title VII, the plaintiff must show that he suffered an adverse employment action.  *Johnson*, 234 F.3d at 507.  The court finds that Helton's rude speech does not amount to an adverse employment action.  *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) ("An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'").

Houston alleges that the five-day suspension he received on June 30, 2007, was in retaliation for filing the complaint with Simmons.  Houston Dep. at 148-154. Assuming that Houston's complaint amounted to participation in protected activity,

Jefferson has failed to establish a causal connection necessary. *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1354-56 (11th Cir. 2000) (holding that, to prevail on a retaliation claim, the plaintiff must establish the requisite causal connection between the adverse employment action and the statutorily-protected activity). Houston has not presented any evidence to demonstrate that Vaughan, the decision maker, knew that Houston had complained to Simmons about racial discrimination at the time Vaughan imposed the five-day suspension.

With respect to Jefferson's and Houston's retaliation claims, the court finds that summary judgment is due to be **GRANTED** in favor of COH.

## CONCLUSION

Having considered the foregoing, the court finds that the plaintiffs have failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial against COH. It is therefore **ORDERED** that summary judgment shall be **GRANTED** in favor of COH, and the plaintiffs' claims against COH shall be **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the 15th day of May 2007.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE